Michael Jungreis, ABA No. 7711184
mj@reevesamodio.com
Keri-Ann C. Baker, ABA No. 1812129
KBaker@reevesamodio.com
Reeves Amodio LLC
500 L Street, Suite 300
Anchorage, AK 99501
(907) 222-7100
Attorneys for Alaska Resource Education

## UNITED STATES DISTRICT COURT

## DISTRICT OF ALASKA

| | |
|---|---|
| ALASKA RESOURCE EDUCATION an Alaska Nonprofit Corporation, <br><br> Plaintiff, <br><br> v. <br><br> MICHELLE BRUNNER, and TODD BRUNNER, <br><br> Defendants. | ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) |

Case No. 3:20-cv-_____

**COMPLAINT**

Alaska Resource Education, for its causes of action, alleges as follows against

Defendants, Michelle Brunner ("Brunner") and Todd Brunner ("T.Brunner"):

<u>Jurisdiction and Venue</u>

1.    This is an action for damages for Brunner's misappropriation of money from her former employer Alaska Resource Education, and for imposition of a constructive trust on property owned by Brunner and T. Brunner.

2.    Venue in this Court is proper pursuant to 28 U.S.C. §1391(b)(2), as the events and actions of Brunner that gave rise to Plaintiff's claims occurred in the District of Alaska.

3.    The Plaintiff, Alaska Resource Education, is a nonprofit corporation organized and existing under the laws of the State of Alaska, with its principal office and place of business located in Anchorage, Alaska. Alaska Resource Education was formerly known as Alaska Mineral and Energy Resource Education Fund. Alaska Resource Education has paid all taxes and filed all reports necessary to qualify it to bring this action.

4.    Defendant Michelle Brunner is a former employee of Plaintiff and misappropriated funds while employed by the Plaintiff. Brunner now resides in and is a citizen of Arizona.

5.    Defendant Todd Brunner is married to Brunner, and resides in, and is a citizen of, Arizona.

6.    The parties are citizens of different states within the meaning of 28 U.S.C. §1332a)(1) and the amount in controversy, exclusive of interest and costs, exceeds

Seventy-Five Thousand Dollars ($75,000).

7.      This Court has jurisdiction over this action pursuant to 28 U.S.C; 28 U.S.C. § 1332.

Preliminary Background

8.      Alaska Resource Education is an educational nonprofit corporation, qualified under §501(c)(3) of the Internal Revenue Code, which participates in a partnership between the Alaska Department of Education and private companies engaged in resource development in Alaska. Alaska Resource Education's original name was Alaska Mineral and Energy Resource Education Fund (AMEREF).

9.      Alaska Resource Education's mission is to educate students about Alaska's natural resources. To that end, Alaska Resource Education provides statewide educational opportunities to students and teachers and manages education curriculum programs that meet Alaska State Science standards aligned with common core standards in English, Language Arts, and Mathematics.

10.      Alaska Resource Education was founded in 1982. Alaska Resource Education is a small nonprofit corporation with a volunteer board and, during the relevant period, only two or three employees.

11.      Alaska Resource Education hired Michelle Brunner ("Brunner") as its executive director from May 12, 2008, through August 23, 2017.

12.    In her role as Executive Director, Brunner had access to the accounting system, bank accounts, payroll, and credit cards for Alaska Resource Education. Brunner created and controlled the financial statements provided to the volunteer board.

13.    When Brunner commenced working as the Executive Director for Alaska Resource Education employed a part-time bookkeeper. approximately ten (10) hours a week.

14.    By the time Brunner left her employment with Alaska Resource Education on August 13, 2017, she had reduced the hours of the part-time bookkeeper, then one Elizabeth Parazoo, from 10 hours a week to 1-2 hours a month.

15.    As Brunner's employment continued, Brunner gained more control over the QuickBooks bookkeeping system and over all of Alaska Resource Education's finances.

16.    Employee Alexandra (Sprano) Becker ("Becker") was employed by Alaska Resource Education from September 24, 2012, through March 30, 2015.

17.    When Becker started her employment with Alaska Resource Education the bookkeeper performed all of Alaska Resource Education's invoicing, payroll, and reconciliations.

18.    However, Brunner gradually shifted the invoicing, payroll, and reconciliations duties to Becker and herself.

19.     Alaska Resource Education used QuickBooks as its accounting system, and during Brunner's tenure as its executive director only she, Becker, and the bookkeeper had the ability to access QuickBooks.

20.     After transitioning the bookkeeping roles in house Brunner obtained admin rights to QuickBooks which allowed her access to all functions of the QuickBooks bookkeeping system.

21.     Brunner also gained access to Alaska Resource Education's employees and contractor's email passwords.

22.     Brunner had both Becker and Parazoo's Alaska Resource Education email passwords.

23.     Once Brunner had sidelined Parazoo and solidified her control over Alaska Resource Education's QuickBooks logins and the email passwords of Alaska Resource Education's employees and contractors, Brunner used this information to deliberately conceal her fraudulent behavior from Alaska Resource Education and its board.

24.     During her employment, Brunner actively took steps to conceal her misappropriation of money from Alaska Resource Education. Brunner actively concealed her diversion of Alaska Resource Education funds for her personal benefit from the board and the other Alaska Resource Education employees.

25.     Ella Ede ("Ede") assumed the role of executive director of Alaska Resource Education in November of 2017.

26.     In June of 2018 in her role as the Executive Director of Alaska Resource Education, Ede was reviewing organizational expenses for the Coal Classic golf tournament from the prior five years when she noticed a discrepancy. The Coal Classic is one of Alaska Resource Education's largest annual fundraisers.

27.     Ede noticed that personal charges had been allocated to the Coal Classic by Brunner. These personal charges included wine club memberships and the personal charges discovered prompted Ede to review additional budget items. Ede investigated further and discovered further expense discrepancies and additional misappropriation of funds by Brunner. Upon further review Ede located approximately thirty thousand dollars ($30,000) of personal charges. Ede notified the board of her preliminary findings.

28.     Alaska Resource Education immediately took steps to change its bookkeeping practices and personally notified its major donors of the misappropriation of funds by a former employee.

29.     The board directed Ede to work with forensic auditor Deborah Mason, C.P.A., ("Mason") of Thomas, Head and Greisen[1] to fully analyze the personal charges discovered by Ede and to review whether any additional funds had been improperly diverted by Brunner.

30.     During her forensic review, Mason reviewed Alaska Resource Education's emails, payroll records, credit card statements, and bank records. These records showed specifically that Brunner had misappropriated at least One Hundred Eighty-Seven Thousand Dollars ($187,000) from Alaska Resource Education.

31.     Brunner's misappropriation actions included stealing money from Alaska Resource Education through unauthorized payroll and bonuses, improper credit card charges for personal expenses, and direct bank transfers. In short, the misappropriation discovered by Mason far exceeded the initial estimates discovered by Ede.

### Brunner's Payroll and Bonus Scheme

32.     Brunner used her position as Executive Director of Alaska Resource Education to embezzle One Hundred Twenty Seven Thousand Five Hundred Dollars ($127,500) in unauthorized payroll payments.

---

[1] In keeping with Alaska Resource Education's mission to provide education opportunities, Mason worked with a finance class at University of Alaska to identify Brunner's improper theft of Alaska Resource Education's money.

33.     Alaska Resource Education's board of directors approves hiring the executive director.

34.     Alaska Resource Education's executive committee ("ExCo") approves pay raises and bonuses for the executive director.

35.     Traditionally, Alaska Resource Education's board budgets staff pay raises at approximately no more than 4% annually and budgets a staff bonus pool at no more than 10% of total salary for the calendar year. These calculations are usually but not always included in Alaska Resource Education's annual budget.

36.     On January 11, 2011, Brunner emailed Theresa Rockhill ("Rockhill") (the then existing contract bookkeeper) and informed Rockhill that 4% salary increases should be implemented for Brunner and another employee, Beth Klein, based on the Alaska Resource Education 2011 budget.

37.     ExCo did not approve Brunner's pay raise in this manner and Alaska Resource Education does not approve pay raises based on its annual budget. This resulted in an unauthorized pay raise for Brunner of $1,720.06 above what was approved by ExCo for 2011.

38.     On December 29, 2011, ExCo president Mike Heatwole sent an email authorizing an 8% bonus of $6,880.00 for Brunner based on Brunner's salary. The bonus was without authorization grossed up for taxes resulting in an unauthorized payment of $3,880.00 above what was approved for Brunner's 2011 bonus by the ExCo.

39.     A second check for $5,115 was paid to Brunner on December 5, 2011, as a matching contribution to Brunner's retirement account. ExCo and Brunner's employment offer letter provided that Alaska Resource Education would match Brunner's retirement account contributions up to 3%. However, Brunner never made a contribution to a retirement account in 2011. The check for $5,115 was processed through QuickBooks as an additional bonus not as a contribution to a retirement plan.  This unauthorized bonus disguised as a retirement contribution was not approved by ExCo and was not earned by Brunner because Brunner failed to contribute the required amounts entitling her to a matching contribution.

40.     Brunner increased her pay rate from $86,000 annually in 2011 to $93,600 in 2012. ExCo did not authorize this pay raise. This unauthorized pay raise resulted in $7,600 in payments to Brunner that were not approved or authorized by Alaska Resource Education.

Case 3:20-cv-00036-JWS   Document 1   Filed 02/19/20   Page 9 of 29

41.     On December 31, 2012, Brunner arranged for a check to be paid herself from ARE for $3,725. The paper payroll record has a handwritten note on the pay stub stating "3% in lieu of Retirement Benefits". This amount was not budgeted or approved by Alaska Resource Education. Brunner did not make any matching contributions and the amount paid is 4% not 3% of Brunner's gross salary.

42.     On December 10, 2012, Robert Enos, on behalf of ExCo approved a 10% bonus and a 3% salary increase. The bonus Brunner actually received was inflated based on being grossed up for taxes and 2012 salary of $96,000. Brunner was paid a bonus of $14,242.71 but the approved bonus was $8,600. Brunner arranged that she would receive $5,642.71 in bonus money for 2012 that was not approved or authorized by Alaska Resource Education.

43.     Brunner's salary increase was inflated by the prior year's unauthorized salary increase. The 3% salary increase approved by ExCo should have increased Brunner's salary to $88,580. However, Brunner arranged that her salary for 2013 was $96,408 which is $7,828 more than was authorized.

44.     Brunner also gave herself two additional unauthorized paychecks in 2013. On July 9, 2013, Brunner received a check for $3,707.98. This check was not approved by Alaska Resource Education or its ExCo.

45.     On November 1, 2013, Brunner arranged to receive a bonus check for $4,056.85. There was no approval of this bonus.

46.     Neither the July 2013 check nor the November 2013 check were authorized by Alaska Resource Education. Additionally, the November check was not reported as income to the IRS and no withholdings were paid to the IRS pursuant to this unauthorized paycheck.

47.     On December 16, 2013, Robert Enos on behalf of ExCo emailed Brunner and authorized a 10% bonus and a 3% salary increase. Brunner was paid a bonus of $14,634 that same day. The bonus was grossed up for taxes. but the bonus was only approved at 10%. The 2013 amount that should have been paid according to Brunner's approved salary was $10,382.40. Brunner received $4,251.60 more in a bonus than was approved by the ExCo of Alaska Resource Education; in addition to the November 12 $3,708 for a total of $8,308.45 paid in 2013 over the approved annual bonus amount.

48.     The payroll records contain a Memo signed by Brunner stating that Brunner's pay rate should be increased by 4% from $96,408.00 to $100,264.00. This memo and the amounts paid is in direct conflict the 3% amount approved by ExCo. Brunner arranged to receive $9,026.66 in unauthorized salary in 2014.

Case 3:20-cv-00036-JWS   Document 1   Filed 02/19/20   Page 11 of 29

49.     On 12/17/14 the bonus approved was 10% of salary. The bonus should have been $9,123.74, but because of unauthorized raises it was $10,026.40 which is an excess of $902.66

50.     In 2015 the authorized salary was $91,237.40, due to unauthorized raises and extra paychecks, Ms. Brunner's actual salary paid was $104,120.37, an excess of $12,882.97.

51.     On November 10, 2015, Ella Ede, then chair of ExCo, emailed Brunner and approved a "year-end performance bonus of 10%." Brunner forwarded Ede's November 10, 2015 email to Parazoo, the then existing bookkeeper, but changed the email to approve a "year-end performance bonus of 10% net of your annual salary." Accordingly, instead of receiving a bonus of $9,123.74 based on Brunner's approved salary Brunner received a bonus of $15,783.00 (grossed up) and was ultimately paid $6,659.26 in unauthorized bonus funds in 2015.

52.     Brunner increased her 2016 salary to $104,274.56 which was not approved or authorized by ExCo.  Brunner received $13,037.16 in unauthorized salary payments from Alaska Resource Education in 2016.

53.     On December 20, 2016, Graham Neale, on behalf of ExCo emailed Brunner approving a 5% bonus based on Brunner's annual salary.  Brunner arranged to receive a bonus of $5,213,72 which is $651.85 more in bonus payments than was approved by ExCo in 2016.

54.     In 2017, Brunner arranged to be paid an annual salary of $104,274.56, but her authorized salary was $91,237.40. Accordingly, when Brunner resigned in August 2017 Brunner was paid $8,524.30 in unauthorized salary payments for 2017.

55.     Bruner also arranged to receive the following unauthorized bonus payments: (a) April 3, 2009, unauthorized bonus of $5,507.20; (b) November 1, 2013, unauthorized bonus of $4056.85; (c) November 25, 2014, unauthorized bonus of $4,228.00; (d) November 27, 2015, unauthorized bonus of $4221.90. These unauthorized bonuses total $18,013.95.

56.     Brunner falsified records in QuickBooks resulting in an inflated leave balance in 2017. The board of Alaska Resource Education negotiated the leave payment amounts but based on Brunner's inflated salary unauthorized payments of $985.96 were paid to Brunner upon her separation from Alaska Resource Education.

57.     Alaska Resource Education also over paid $8,146.86 in payroll taxes based on Brunner's inflated unapproved salary amounts.

Case 3:20-cv-00036-JWS   Document 1   Filed 02/19/20   Page 13 of 29

58.     In total Alaska Resource Education paid Brunner unauthorized salary, bonus, and payroll taxes in of $127,534.38 from January 2009 to August 2017.

59.     Brunner was also paid $6,812.00 in two payments disguised as SEP / IRA matching contributions.

60.     Brunner miscoded these unauthorized salary payments, bonus, payroll taxes, and SEP / IRA matching contributions in QuickBooks to disguise them. Brunner destroyed physical files and deleted emails and files that would have revealed Brunner's fraudulent scheme.

### Direct Bank Transfers to Brunner

61.     Brunner transferred wrongfully and without authorization at least $38,155 from Alaska Resource Education's bank account to her personal bank account. These unauthorized transfers include: (a) March 1, 2016, direct bank payment of $16,500; (b) July 18, 2016, direct bank payment of $13,700; (c) August 11, 2016, direct bank payment of $2,656.75; (d) August 11, 2016 a second identical direct bank payment of $2,656.75; and (e) March 14, 2017, direct bank payment of $2,641.19.

62.     Brunner deliberately took steps to hide these transactions by coding her fraudulent bank transfers to existing Alaska Resource Education vendors. These deliberate actions were taken to shield these direct bank transfers from discovery by Alaska Resource Education.

63.     Brunner coded the March 1, 2016, direct bank payment of $16,500 to American Educational Products. American Education Products never received this payment. Upon information and belief this money was used by Brunner and her husband on vacation in Mexico where the defendants own a trailer.

64.     Brunner coded the July 18, 2016, direct bank payment of $13,700 to National Energy Foundation but National Energy Foundation never received this payment. This money was retained by Brunner.

65.     Brunner coded the August 11, 2016 direct bank payment of $2,656.75 and the second identical August 11, 2016 direct bank payment of $2,656.76 to Alaska Airlines in the QuickBooks system. Alaska Airlines never received these payments. This money was retained by Brunner.

66.     By coding these direct bank payments to regular and existing vendors of Alaska Resource Education Brunner effectively hid these payments to herself from Alaska Resource Education.

67.     Brunner deliberately falsified emails from other Alaska Resource Education employees and consultants to obtain a mortgage on her home in Arizona.

68.     On August 4, 2016, Brunner emailed Jeff O'Brasky at Homeowners Financial Group, a mortgage brokerage, and informed him that she had received two additional "transactions in our checking account" to be considered for mortgage purposes. The two additional transactions in Brunner and her husband's checking account consisted of the two direct payments of $2,656.75 and $2,656.76 (recorded in QuickBooks as Alaska Airlines travel on August 11, 2016) that Brunner stole from Alaska Resource Education and coded to Alaska Airlines to cover up her embezzlement.

69.     Brunner also falsely informed O'Brasky that the Alaska Resource Education board president had already approved a payroll advance. O'Brasky informed Brunner that he needed the actual transaction histories to consider these amounts in connection with Brunner and T.Brunner's mortgage application.

70.     In response to O'Brasky's request on August 11, 2016, Brunner sent an email from bookkeeper Parazoo's email address to Brunner's email address. Parazoo's purported email stated that "effective today a payroll advance equal to one month's salary has been submitted to payroll for processing.  You should expect payment in your bank late this evening totaling $5,313.51. The advance will be deducted from your year-end bonus with [which] is scheduled for the final November payroll." The two direct payments Brunner stole of $2,656.76 totaled $5,313.51. These direct payments were not part of her salary and did not show up on Brunner's W-2. Alaska Resource Education does not give payroll advances and did not approve this supposed payroll advance. This so-called payroll advance was not deducted from Brunner's year-end bonus. Parazoo was not in the office when this email was sent and did not send this email.

71.     On August 15, 2016, Brunner sent O'Brasky an email enclosing a letter from Alaska Resource Education's board president which she claimed pertained to her recently approved bonus. The letter was dated August 8, 2016, and was completely fabricated. ExCo did not approve any bonuses or payroll advances and the board president did not write that letter.

72.     Brunner stole these amounts and fabricated emails and letters from Alaska Resource Education consultants and board members to inflate her income and cash flow so Brunner and her husband could purchase a home in Arizona.  Brunner and her husband did purchase a home. Brunner used the money she stole from Alaska Resource Education to purchase her and her husband's home in Arizona.

*Credit Card Charges*

73.     During her employment with Alaska Resource Education Brunner also charged over $26,563.58 in personal expenses to Alaska Resource Education's credit card. These charges included: (1) personal travel expenses for her family such as airline tickets, hotel and rental cars, makeup, personal meals, alcohol, and other vacation expenses; (2) wine club memberships totaling more than Six Thousand Dollars ($6,000); (3) personal Costco purchases; (4) personal creditor payments; and, (5) numerous other personal charges..

74.     Brunner repaid three payments to ARE which appear to be reimbursement of personal charges to the ARE credit card. On 8/28/15 there was a payroll deduction of $836.67, and on 9/11/15 there was a second payroll deduction of $836.67. These appear to be repayment of $1,673.34 for personal plane tickets for Bruner and T.Brunner to Mazatlán, Mexico. Prior to her final date of employment, Brunner wrote two personal checks to ARE on 8/23/17 and 8/24/17 with a note in QuickBooks of "repayment of personal charges." Repayments from Brunner and T.Brunner totaled $11,872.69. The net amount stolen through use of the credit card was $14,690.89.

75.     Brunner also diverted money through direct bank transfer from Alaska Resource Education's bank to her personal bank account and mortgagor. The diverted funds total Thirty-Eight Thousand One Hundred Fifty-Five Dollars ($38,155) in 2106 and 2017. A large portion of these diverted bank transfers were used by Brunner and her husband Todd to purchase a second home in Arizona.

76.     Brunner used money she stole to fund lavish vacations for herself and her husband Todd. Upon information and belief, Brunner used money she stole to purchase a trailer or other assets for herself and her husband Todd in Mexico.

77.     Brunner took extensive actions to cover up her embezzlement and hide her misdeeds from Alaska Resource Education's other employee and board of directors. These actions include deleting her entire email account upon leaving employment with Alaska Resource Education. Alaska Resource Education hired an IT professional who partially restored Brunner's email account.

78.     Brunner's restored emails revealed further fraudulent actions taken by Brunner to conceal her embezzlement including forging documents and providing forged documents detailing pay advances and bonuses to her mortgagor to acquire sufficient funds to purchase a home in Arizona.

79.     In August 2016 Brunner forged a letter from the Alaska Resource Education board president on letterhead which she provided to her mortgage lender. The letter purported to demonstrate a bonus had been approved by Alaska Resource Education. Brunner also forged an email from the Alaska Resource Education bookkeeper to herself that purported to be the approval of a payroll advance that would be deducted for her Brunner's future bonus. This email was also sent to Brunner's mortgage lender in Arizona to secure sufficient funds to close on her house in Arizona.

80.     Brunner also altered emails from the board representative detailing payroll and bonuses to increase the amounts over the amounts authorized by the board before forwarding the emails to the bookkeeper. Brunner then transferred a total of Five Thousand Three Hundred Thirteen Dollars ($5,313) to herself.

81.     Brunner created fake coding in Alaska Resource Education's QuickBooks accounting system that coded these electronic bank statements to Alaska Airlines. Alaska Airlines did not receive any money for these charges.

82.     During her employment, Brunner also miscoded other items in Alaska Resource Education's QuickBooks system to deliberately conceal her embezzlement. Brunner coded various moneys she misappropriated for herself in QuickBooks to other vendors including Alaska Airlines, American Educational Products and National Energy Foundation. Alaska Airlines, American Educational Products and National Energy Foundation did not receive money for these charges. Brunner took these actions to conceal her activities form Alaska Resource Education's board.

83.     Brunner also shredded numerous paper documents to further conceal her embezzlement of money from Alaska Resource Education.

Case 3:20-cv-00036-JWS   Document 1   Filed 02/19/20   Page 21 of 29

84.     On or around July 19, 2016, Brunner used some of the funds fraudulently obtained from Alaska Resource Education to purchase a house with her husband T.Brunner in in Maricopa County, Arizona. The legal description of that house purchased with fraudulent funds is follows:

> Lot 541, Of Sun City West Unit 10, According to the Plat of Record in the Office of the County Recorder of Maricopa County, Arizona, Recorded in Book 204 of Maps, Page 42. (the "Arizona Property").

85.     Upon information and belief Brunner used funds embezzled or fraudulently obtained from Alaska Resource Education to make payments on the mortgage and/or maintain this property.

86.     Brunner was not authorized to intercept, receive, or spend monies in this fashion. Brunner repeatedly and willfully took action to conceal her embezzlement during her employment and thus Brunner's misappropriation was not discovered until after her employment with Alaska Resource Education terminated.

87.     Brunner used interstate wire communications in furtherance of the illegal scheme in violation of 18 U.S.C. § 1843.

88.     Brunner violated the National Stolen Property Act, 18 USC § 2314. Brunner has violated 28 U.S.C. § 2314 by using email to send forged documents to her lender in Arizona purporting to approved payroll advances and bonuses for the purposes of

Case 3:20-cv-00036-JWS   Document 1   Filed 02/19/20   Page 22 of 29

using funds stolen from Alaska Resource Education to purchase the Arizona Property. Brunner then used moneys she stole in Alaska and transferred these moneys to her lender in Arizona in order to purchase the Arizona Property.

89. Due to the actions of Brunner in concealing and destroying evidence of her embezzlements and fraud, Alaska Resource Education did not discover the complained of conduct until June of 2018.

## COUNT I

### Embezzlement
as to Michelle Brunner

90. The Plaintiff hereby incorporates by reference the allegations contained in Paragraphs 1 through 89 above as if the same were fully set forth herein.

91. Brunner was in a position of trust at Alaska Resource Education.

92. Brunner used this position of trust to intentionally convert money that belonged to Alaska Resource Education to her own use.

93. Brunner's actions caused Alaska Resource Education to suffer substantial and irreparable harm, including, without limitation, a loss of revenue and profits, damage to its goodwill and reputation and a loss of its investment of financial resources. Alaska Resource Education has also suffered an unquantifiable loss of future

Case 3:20-cv-00036-JWS   Document 1   Filed 02/19/20   Page 23 of 29

business in those persons who are hesitant or will no longer donate to Alaska Resource Education.

94.    Alaska Resource Education is entitled to recover from Brunner (a) $187,000 in known and already demonstrated amounts stolen by her, and (b) $50,000 estimated as compensation for cash known to have been stolen by Brunner but not yet quantified, in amount to be proven, and (c) punitive damages taking into account not only the abuse by Brunner of her fiduciary position with Alaska Resource Education but also the fact that the stolen funds were donated to Alaska Resource Education for the purpose of assisting in the education of Alaska's youth.

COUNT II

FRAUD
as to Michelle Brunner

95.    Plaintiff hereby incorporates by reference the allegations contained in Paragraphs 1 through 94  above as if the same were fully set forth herein

96.    While acting in a fiduciary capacity, Brunner represented to Alaska Resource Education that goods and services had been supplied to Alaska Resource Education when they had not been supplied.

97.     While acting in a fiduciary capacity, at the time Brunner presented coded invoices or falsely coded various to vendors Brunner knew that the goods and services for which they demanded payment had not been supplied by these vendors.

98.     At the time Defendant Brunner, while acting in a fiduciary capacity, through fraud and misrepresentation provided incorrect and misleading facts to other Alaska Resource Education employees to convince them to authorize or provide payment of unapproved payroll advances and bonuses referenced above, even though she knew that these payments had not been approved or authorized as required by the board of directors or ExCo.

99.     Alaska Resource Education relied upon the representations made by Brunner and contained in the invoices, improperly coded accounting codes and elsewhere and made payment to Brunner, to which she was not entitled, of at least $187,000.

100.    Alaska Resource Education has suffered direct monetary damages as the result of the fraud and misrepresentations made by Brunner.

## COUNT III

## UNJUST ENRICHMENT
as to all Defendants

101. Plaintiff hereby incorporates by reference the allegations contained in Paragraphs 1 through 104 above as if the same were fully set forth herein

102. Brunner received benefit in the form of payments from Alaska Resource Education made in reliance upon Brunner's misrepresentations and fraud.

103. These payments came at the expense of Alaska Resource Education. Alaska Resource Education received nothing of value in return for the payments.

104. It is unjust for Brunner and her husband T.Brunner to retain the benefit of these payments, including among other things the residence they purchased with converted funds from Alaska Resource Education, and they should be required to disgorge and return the payments.

## COUNT IV

### CONSTRUCTIVE TRUST
as to all Defendants

105. Plaintiff hereby incorporates by reference the allegations contained in Paragraphs 1 through 104 above as if the same were fully set forth herein

106. Any property interest Brunner and her husband T.Brunner hold in the embezzled and/or fraudulently obtained funds, and any assets maintained, purchased or obtained using the funds, is held unfairly.

107.   Any property interest Brunner and her husband T.Brunner hold in the embezzled and/or fraudulently obtained funds, and any assets purchased or obtained using the embezzled funds, was obtained by unjust, unconscionable, and unlawful means.

108.   Any property interest Brunner and her husband T.Brunner hold in the embezzled and/or fraudulently obtained funds, and any assets maintained, purchased or obtained using the embezzled funds rightly belongs to Alaska Resource Education.

109.   Alaska Resource Education has a good equitable claim to any assets that can be found to have been received by Brunner and her husband T.Brunner or obtained by them as a result of the funds embezzled from Alaska Resource Education, specifically including the Arizona Property.

110.   A constructive trust should be placed over all property interests in the embezzled and/or fraudulently obtained funds and all property interests maintained, purchased or obtained using embezzled and/or fraudulently obtained funds, and title and ownership conveyed back to Alaska Resource Education.

111.   Under the circumstances it would be inequitable to allow Brunner and her husband T.Brunner to retain embezzled and/or fraudulently obtained funds from Alaska Resource Education or any assets maintained, purchased, or obtained with

Case 3:20-cv-00036-JWS   Document 1   Filed 02/19/20   Page 27 of 29

those funds. Therefore, a constructive trust should be imposed upon such funds and assets in favor of Alaska Resource Education as beneficiary. Accordingly, Brunner and her husband T.Brunner should be prohibited from transferring title in the Arizona Property.

WHEREFORE, the Plaintiff, Alaska Resource Education prays this Court grant judgment against the Brunner as follows:

1.    Compensatory damages against Michelle Brunner for fraud while acting in a fiduciary capacity of $237,000.

2.    Preliminary and permanent injunctive relief to enjoin the defendants from disposing of or encumbering their assets during the pendency of this action and until the enforcement of a constructive trust.

3.    Imposition of a constructive trust on assets of the defendants in particular their residence in Arizona.

4.    Punitive damages of three times the compensatory damages.

5.    All costs and fees incurred in prosecuting this action with respect to the claims alleged I & II.

6.    Such other and further relief as the Court may deem just in the premises.

DATED at Anchorage, Alaska this ⟍8 day of February 2020.

REEVES AMODIO LLC
Attorneys Plaintiffs Alaska Resource Education

By: _____

Michael Jungreis, ABA #7711184
Keri-Ann C. Baker, ABA #1812129

Case 3:20-cv-00036-JWS   Document 1   Filed 02/19/20   Page 29 of 29